UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RANDALL WECK,

      Petitioner,

v.                            Case No. 5:17-cv-3-OC-34PRL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I. Status

      Petitioner Randall Weck, an inmate of the Florida penal system, initiated this action on December 16, 2016, by filing, with the assistance of counsel, a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1) in the United States District Court Northern District of Florida. On December 28, 2016, the Northern District transferred the case to this Court. See Doc. 3. In the Petition, Weck challenges a 2015 state court (Citrus County, Florida) judgment of conviction for grand theft, three counts of theft, two counts of vehicular theft, and burglary of a structure. Weck raises two grounds for relief. See Petition at 17-24.[1] Respondents have submitted a memorandum in opposition to the Petition. See Response to Petition (Response; Doc. 8) with exhibits (Resp. Ex.). On June 20, 2017, Weck filed a brief in reply. See Petitioner's Reply to State's Response (Reply; Doc. 14.). This case is ripe for review.

---

[1] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Procedural History

On March 16, 2009, the State of Florida charged Weck by way of Information with grand theft with property damage (count one), three counts of grand theft - $300 or more but less than $20,000 (counts two, three, seven), two counts of grand theft of vehicles (counts four and six), and burglary of a structure - non-dwelling (count five). Resp. Ex. 1. On October 5, 2009, Weck entered a negotiated no-contest plea as to all seven counts. Resp. Ex. 2. The same day, the circuit court adjudicated Weck guilty and sentenced him as a youthful offender to a term of probation of three years as to each count, with the sentence imposed on count two running consecutive to the sentence imposed on count one and with counts three through seven running concurrent with each other and counts one and two. Resp. Ex. 4. Weck did not appeal.

On December 27, 2009, Weck violated condition five of his probation by committing the criminal offense of possession of alcohol by a person under twenty-one. Resp. Ex. 5. On May 7, 2010, the circuit court granted Weck's motion to dismiss the violation of probation (VOP) warrant and continue Weck's probation with the same previously imposed conditions. Resp. Ex. 7.

In September of 2010, Weck violated conditions three and nine of his probation by changing his residence and leaving the county without permission and failing to comply with instructions. Resp. Ex. 9. On March 11, 2011, the circuit court found Weck in violation of his probation, revoked his probation, and then reinstated probation again with the previous conditions. Resp. Ex. 10.

On September 21, 2012, the Florida Department of Corrections (FDOC) filed a technical violation notification for Weck's failure to pay the cost of supervision, make

restitution and court cost payments, and complete community service requirements. Resp. Ex. 12. The circuit court determined no further action was required. Id.

Weck again violated his probation in February and March of 2014. Resp. Ex. 13. In February of 2014, Weck was arrested for driving without a license, which violated condition five of his probation. Id. In March of 2014, Weck failed to pay the cost of supervision, pay restitution, complete community service requirements, and obtain his GED. Id. On July 15, 2014, Weck admitted he violated the terms of his probation and the circuit court revoked his probation and sentenced Weck to a term of incarceration of eleven years in prison as to count one and five years in prison as to counts two through seven, with all counts running concurrently. Resp. Exs. 15; 16. Weck, through counsel, filed a motion to modify his sentence pursuant to Florida Rule of Criminal Procedure 3.800(c) (Rule 3.800(c) Motion) on August 20, 2014. Resp. Ex. 17. On September 9, 2014, the circuit court granted the Rule 3.800(c) Motion and set aside the sentence imposed on July 15, 2014. Resp. Ex. 18. The circuit court noted that Weck's VOP plea remained in place though. Id. On November 20, 2014, the circuit court revoked Weck's previous probation and placed him on community control for two years with the previous probation conditions still applying. Resp. Exs. 19; 20. Weck did not appeal.

In November and December of 2014, Weck violated two conditions of his community control by testing positive for marijuana and failing to remain confined to his approved residence. Resp. Exs. 21; 22. On April 1, 2015, Weck admitted to violating the conditions of his community control. Resp. Exs. 23; 24. The same day, the circuit court revoked community control and sentenced Weck to a term of incarceration of eleven

years in prison as to count one and five years in prison as to counts two through seven, with all counts running concurrently. Id. Weck did not appeal.

On June 3, 2015, Weck filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) (Rule 3.800(a) Motion), in which he argued the circuit court erred when it failed to resentence him as youthful offender and to give him credit for four years, four months, and fifteen days of time served on probation. Resp. Ex. 25. The circuit court denied the Rule 3.800(a) Motion on June 19, 2015. Resp. Ex. 26. Weck did not appeal.

On August 12, 2015, Weck filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. 27. In his Rule 3.850 Motion, Weck alleged that his counsel misadvised when counsel told him that Weck's admission to his probation officer that he used marijuana was a valid admission. Id. Weck contended that the admission was given under false presentences and should not have been introduced at the hearing on his violation of community control. Id. On September 2, 2015, the circuit court denied Weck's Rule 3.850 Motion. Resp. Ex. 28. Weck appealed, Resp. Ex. 29, and the Fifth District Court of Appeal (Fifth DCA) per curiam affirmed the denial without a written opinion on February 2, 2016. Resp. Ex. 31. The Fifth DCA issued the Mandate on March 11, 2016. Resp. Ex. 34.

On April 18, 2016, Weck, with the assistance of counsel, filed a petition for belated appeal to challenge the judgment and sentence imposed on April 1, 2015. Resp. Ex. 35. The Fifth DCA remanded the case to the circuit court to hold an evidentiary hearing on the petition and file a recommendation with the Fifth DCA concerning whether to grant the petition. Resp. Ex. 38. On August 25, 2016, the circuit court determined that Weck

did not timely communicate to his counsel his desire to file an appeal and recommended denying the petition. Resp. Ex. 39. Four days later, on August 29, 2016, the Fifth DCA denied Weck's petition for belated appeal. Resp. Ex. 40. Weck appealed the denial of his petition for belated appeal to the Fifth DCA. Resp. Exs. 41; 42. On September 9, 2016, the Fifth DCA issued an order to show cause why the appeal should not be dismissed for lack of jurisdiction. Resp. Ex. 43. Weck did not respond to the order to show cause and, on September 21, 2016, the Fifth DCA dismissed the appeal. Resp. Ex. 44.

### III. One-Year Limitations Period

This action is timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Weck's] claim[s] without

further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

§ 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[2] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

---

[2] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).
[4] Wainwright v. Sykes, 433 U.S. 72 (1977).
[5] Murray v. Carrier, 477 U.S. 478 (1986).

> errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

"[A] claim for ineffective assistance of counsel, if both exhausted and not procedurally defaulted, may constitute cause." Henry v. Warden, Ga. Diag. Prison, 750 F.2d 1226, 1230 (11th Cir. 2014); see also Carrier, 477 U.S. at 488; Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (citing Edwards v. Carpenter, 529 U.S. 446, 451 (2000)) ("An attorney's constitutional ineffectiveness in failing to preserve a claim for review in state court may constitute 'cause' to excuse a procedural default."). But the petitioner must first present his or her ineffective assistance claim to the state courts as an independent claim before he may use it to establish cause to excuse the procedural default of another claim. Carrier, 477 U.S. at 488; see also Henderson v. Campbell, 353 F.3d 880, 896 n.22 (11th Cir. 2003). If the secondary ineffective assistance claim is itself procedurally defaulted, the "procedurally defaulted ineffective assistance of counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself." Henderson, 353 F.3d at 897 (citing Edwards, 529 U.S. at 446 and Carrier, 477 U.S. at 478).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration

> on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

"[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was

incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

In Ground One, Weck argues that his counsel was ineffective at the April 1, 2015 violation of community control hearing when counsel misadvised him regarding the admissibility of his coerced admission to testing positive for marijuana. Petition at 19-21. According to Weck, probation officer Cowart prematurely disposed of the positive urinalysis test kit and coerced Weck into signing the VOP admission form. Id. at 20. Weck alleges that he told counsel about these facts, but counsel advised Weck that the circuit court "would not likely believe his version of the events and that it was in his best interest to enter a guilty plea." Id. Additionally, Weck contends that counsel failed to advise him that the exclusionary rule applies in VOP hearings. Id. But for this misadvice, Weck contends he would not have pled guilty to violating his probation. Id. The circuit court

rejected this claim; however, Weck contends that the circuit court's analysis was contrary to the Supreme Court's holding in Hill v. Lockhart, 474 U.S. 52 (1985) because the circuit court used the wrong standard in evaluating his claim of prejudice. Id. at 21. Weck maintains that the circuit court used the general Strickland prejudice standard but should have used the prejudice standard announced in Hill that requires a postconviction court to determine whether there was a reasonable probability that counsel's errors resulted in Weck entering a plea he would not have entered otherwise. Id.

Weck raised a similar claim in his Rule 3.850 Motion. Resp. Ex. 27. The circuit court denied this claim, explaining in part:

> In the context of a guilty plea a defendant must show a reasonable probability that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Brazeail v. State, 821 So.[]2d 364, 367-68 (Fla. 1st DCA 2001). In determining whether a defendant would have insisted on going to trial, the court will "consider the credibility of the defendant's assertion that he would have insisted on going to trial. If the defense was meritless, the defendant's claim carries much less weight." Grosvenor v. State, 874 So.[]2d 1176 (Fla. 2004). Moreover, "a court should consider the totality of the circumstances surrounding the plea, including such factors as whether a particular defense was likely to succeed at trial, the colloquy between the defendant and the trial court at the time of plea, and the difference between the sentence imposed under the plea and the maximum possible sentence the defendant faced at a trial." Id. at 1181-82.
>
> In his motion, Defendant alleges his positive drug screens were obtained under "false pretense" and that he advised his attorney. Defendant claims his trial counsel was ineffective for failing to challenge the existence of the positive drug screen and advising the Defendant to admit to the violation. The Court finds these arguments to be without merit. In the instant case, the Defendant admitted to a violation of probation. The Court held a thorough colloquy regarding his rights and advice from his attorney. As noted above Defendant's violation was based on [a] positive drug screen

> as well as [a] failure to remain in [his] approved residence.
> Whether the drug results would have been proven the
> Defendant would have been violated for another violation.
> Moreover, Defendant was previously found in violation of
> probation. As noted by trial counsel Defendant was provided
> numerous opportunities with reinstatements after at least
> three violations of probation. However, Defendant failed to
> abide by the terms of his probation. The Defendant has failed
> to demonstrate his counsel's advice was outside the broad
> range of reasonably competent performance under prevailing
> professional standards.

Resp. Ex. 28 (record citations omitted). The Fifth DCA per curiam affirmed the denial without a written opinion. Resp. Exs. 31; 34.

To the extent that the Fifth DCA decided these claims on the merits,[6] the Court will address these claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Here, the circuit court understood the relevant prejudice standard, citing to it in its order, and found that Weck failed to demonstrate deficient performance <u>and</u> prejudice. Moreover, the circuit court's analysis demonstrates it reviewed the totality of the circumstances in finding Weck could not demonstrate prejudice. Thus, Weck is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, the claim in Ground One is meritless. In the context of convictions arising from

---

[6] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

guilty or no contest pleas, a petitioner establishes prejudice if he or she can demonstrate that there was a reasonable probability that he or she would have proceeded to trial (or in this case a revocation hearing) if not for counsel's errors. Hill, 474 U.S. at 58-60. In evaluating prejudice under the Hill standard, postconviction courts should consider the strength of the prosecution's case, any available defenses, the plea colloquy and negotiations, and potential sentencing exposure. See Hill, 474 U.S. at 59-60; see also Padilla v. Kentucky, 559 U.S. 356, 372 (2010) (noting that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."). The United States Supreme Court has noted that "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Under Florida law, "[a] rule 3.850 motion cannot be used to go behind representations the defendant made to the trial court, and the court may summarily deny post-conviction claims that are refuted by such representations." Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013). By entering a guilty plea, a defendant waives any right to have his or her counsel investigate or put forward a defense. Smith v. State, 41 So. 3d 1037, 1040 (Fla. 1st DCA 2010) (citing Davis v. State, 938 So. 2d 555, 557 (Fla. 1st DCA 2006)). Similarly, "[w]here a defendant enters a plea and swears that he is satisfied with his counsel's advice, he may not later attack counsel's effectiveness for failure to investigate or defend the charge." Id. Indeed, in Florida, a defendant should not receive an evidentiary hearing "when the basis of the claim is that he lied under oath at the relevant hearing." Polk v. State, 56 So. 3d 804, 808 (Fla. 2d DCA 2011); see also Alfred v. State, 71 So. 3d 138, 139 (Fla. 4th DCA 2011) ("A

defendant is bound by his sworn answers during a plea colloquy and cannot later disavow those answers by asserting that he lied during the colloquy at counsel's direction.").

The record reflects that at the April 1, 2015 VOP hearing, Weck testified, under oath, that he was satisfied with his counsel's advice and that he admitted to using marijuana and failing to remain confined to his approved residence. Resp. Ex. 23 at 5-6. Weck signed a positive drug urinalysis statement in which he admitted submitting a positive drug test for marijuana and admitted to using marijuana after the November 20, 2014 sentencing. Id. at 14. Weck is bound by these statements and his representations to the circuit court alone would defeat his claim here as he essentially alleges that he lied under oath. See Blackledge, 431 U.S. at 74; Kelley, 109 So. 3d at 812-13; Smith, 41 So. 3d at 1040; Polk, 56 So. 3d at 808; Alfred, 71 So. 3d at 139.

Ultimately, Weck entered an open plea admitting to violating his community control and the circuit court sentenced him to eleven years in prison, which is far less than he could have faced had he not entered the plea. Once community control is revoked, a court can "impose any sentence which it might have originally imposed before placing the probationer on probation or the offender into community control." § 948.06(2)(b), Fla. Stat. Count one was a first-degree felony punishable by up to thirty years in prison. § 775.082(3)(b)1), Fla. Stat. The remaining six counts were third degree felonies punishable by up to five years in prison. § 775.082(3)(e), Fla. Stat. If Weck proceeded to a revocation hearing, he could have faced a total of sixty years in prison if the circuit court determined Weck substantively violated his community control and sentenced him to the statutory maximum on each count and ran each count consecutively. Accordingly, Weck's

eleven-year sentence following his open plea to the circuit court afforded him a lesser sentence than he could have faced.

Additionally, according to Weck, counsel's misadvice amounted to counsel telling Weck "that the judge would not likely believe his version of the events and that it was in his best interest to enter a guilty plea" and failed to advise Weck that the exclusionary rule applied in revocation proceedings. Petition at 20. Counsel's alleged advice here is hardly coercive as counsel merely communicated his belief that the circuit court would not find his claim credible. Nothing in Weck's allegations show his counsel threatened him to enter the plea or misadvised him. To the extent Weck may claim his counsel's advice was erroneous based on the facts Weck provided him, the Court finds Weck has provided only conclusory allegations as to how the probation officer allegedly coerced him into signing the admission. As such, Weck has failed to carry his burden of proof. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (holding that conclusory allegations of ineffective assistance of counsel are insufficient to merit habeas relief).

Accordingly, when viewing Weck's affirmative statements to the circuit court that he smoked marijuana and was satisfied with his attorney's performance, the lesser sentence he received, and the likelihood his claim of coercion by the probation officer would not have succeed in stopping the circuit court from revoking his community control and imposing the same sentence, the Court finds there is no reasonable probability Weck

would have foregone his plea and proceeded to a revocation hearing. For the foregoing reasons, this claim is due to be denied.

## B. Ground Two

In Ground Two, Weck notes that he was originally sentenced as a youthful offender, which, under Florida law, puts a six-year cap on any prison term. Petition at 22. However, also pursuant to Florida law, if a defendant sentenced as a youthful offender and serving a term of probation substantively violates his or her conditions of probation the circuit court can impose a sentence up to the statutory maximum. Id. at 23. In Ground Two, Weck contends that his counsel was ineffective for failing to advise him of this possibility that he could potentially receive a sentence higher than the six-year youthful offender sentence. Id. at 23-24. Specifically, he asserts that his counsel failed to advise him that a positive urinalysis was a substantive violation and, therefore, he assumed when he entered his open plea that he would not be facing more than six years in prison. Id. at 23. He also asserts the circuit court failed to advise him of this possibility. Id. But for counsel's failure to advise him on this legal matter, Weck maintains that he would not have entered the plea and would have proceeded to a revocation hearing.

Respondents contend Weck failed to exhaust this claim because he never raised this issue in state court. Response at 11-16. In his Petition, Weck acknowledges this claim was not exhausted in state court but alleges that he can overcome this procedural default under Martinez v. Ryan because in Florida defendants are not entitled to counsel to prepare and file Rule 3.850 motions. Petition at 22.

The Eleventh Circuit has explained the holding of Martinez as follows:

> In Martinez, the U.S. Supreme Court enunciated a narrow exception to the general rule that the lack of an attorney or

attorney error in state post-conviction proceedings does not establish cause to excuse the procedural default of a substantive claim. 566 U.S. at 8, 13-14, 132 S.Ct. at 1315, 1318. The Supreme Court, however, set strict parameters on the application of this exception. It applies only where (1) state law requires a prisoner to raise ineffective-trial-counsel claims during an initial collateral proceeding and precludes those claims during direct appeal; (2) the prisoner failed to properly raise ineffective-trial-counsel claims during the initial collateral proceeding; (3) the prisoner either did not have counsel or his counsel was ineffective during those initial state collateral proceedings; and (4) failing to excuse the prisoner's procedural default would result in the loss of a "substantial" ineffective-trial-counsel claim. Id. at 14, 132 S.Ct. at 1318; see also Arthur v. Thomas, 739 F.3d 611, 629 (11th Cir. 2014) (setting forth the Martinez requirements).

Lambrix, 851 F.3d at 1164. A claim is substantial if it "has some merit." Martinez, 566 U.S. at 14. The Court notes that Martinez applies only to procedurally defaulted claims of ineffective assistance of trial counsel not raised in an initial collateral review proceeding. See Martinez, 566 U.S. at 9 ("This opinion qualifies Coleman by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."); Gore v. Crews, 720 F.3d 811, 816 (11th Cir. 2013) ("By its own emphatic terms, the Supreme Court's decision in Martinez is limited to claims of ineffective assistance of trial counsel that are otherwise procedurally barred due to the ineffective assistance of post-conviction counsel.").

Initially, the Court finds that to the extent this claim is a claim of trial court error, Martinez does not excuse Weck's failure to exhaust this claim. See id. Weck has failed to establish cause or demonstrate prejudice and has not demonstrated a claim of actual innocence. Therefore, relief on this claim as it relates to the circuit court's failure to advise Weck is due to be denied as any such claim is procedurally defaulted.

Turning to Weck's claim of ineffective assistance of counsel, the Court must now determine whether the claim in Ground Two is substantial such that it would fall under the narrow exception expressed in Martinez. The record reflects that during the evidentiary hearing on Weck's petition for belated appeal, Weck testified that counsel advised him that he faced eleven years in prison. Resp. Ex. 39 at 2. Counsel also testified at that hearing that he advised Weck of the potential outcomes of the proceeding and that it would not be easy to win. Id. Accordingly, Weck's own testimony at the hearing on his petition for belated appeal refutes his allegations here, as he admitted at that hearing that counsel told him he could receive a sentence beyond six years. As such, this claim is not a substantial ineffective assistance of counsel claim that would entitle Weck to proceed on this claim pursuant to Martinez. Outside of his Martinez argument, Weck has not provided good cause or demonstrated prejudice to excuse this procedural default. Likewise, he has not demonstrated evidence of his actual innocence. Therefore, this claim is unexhausted and relief is due to be denied as procedurally defaulted. Moreover, the Court's Martinez analysis here also establishes relief on this claim would be denied on the merits had it been exhausted. In light of the foregoing, the relief Weck seeks in Ground Two will be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Weck seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Weck

"must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Weck appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to

proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** in Chambers, this 9th day of October, 2019.


MARCIA MORALES HOWARD
United States District Judge


Jax-8

C:    counsel of record